IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DONOVAN THOMAS,

                    Plaintiff,

     v.

SERGEANT O'NEIL, Mid-State
Correctional Facility, *et al.,*

                  Defendants.

_____

Civil Action No.
9:12-CV-1061 (MAD/DEP)

<u>APPEARANCES</u>:

<u>FOR PLAINTIFF</u>:                    <u>OF COUNSEL</u>:

DONOVAN THOMAS, *Pro Se*
163 East 95th Street
Apt. 2R
Brooklyn, NY 11212

<u>FOR DEFENDANTS</u>:

HON. ERIC T. SCHNEIDERMAN         MICHAEL G. McCARTIN, ESQ.
Office of the Attorney General       Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Donovan Thomas, a former New York State prison inmate, commenced this action in July 2012, asserting civil rights claims pursuant to 42 U.S.C. § 1983 against the Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS") and several DOCCS employees stationed at the correctional facility in which he was confined at the relevant times. Following the joinder of issue, the court entered an order that, *inter alia*, granted defendants leave to take plaintiff's deposition. Defendants thereafter served plaintiff with a notice to take his deposition on May 30, 2013. Plaintiff, however, failed to appear for that deposition.

Currently pending before the court is defendants' motion for sanctions, pursuant to Rule 37 of the Federal Rules of Civil Procedure, based upon the foregoing circumstances. For the reasons set forth below, I recommend that defendants' motion be granted, and plaintiff's complaint be dismissed.

I.     <u>BACKGROUND</u>

Plaintiff commenced this action on July 2, 2012. Complaint (Dkt. No. 1). At the time, plaintiff was a New York State prison inmate confined in the custody of the DOCCS, and designated to the Queensboro Correctional

2

Facility, located in Long Island City, New York. *Id.* Following commencement of the action, plaintiff was granted leave to proceed *in forma pauperis*. *See* Dkt. No. 5.

On December 18, 2012, the court issued the standard mandatory pretrial discovery and scheduling order issued in all such inmate cases, pursuant to Rule 16 of the Federal Rules of Civil Procedure. Dkt. No. 21. That order set out certain obligations of the parties regarding discovery, specifically permitted leave to defendants to take plaintiff's deposition, pursuant to Rule 30(a)(2)(B) of the Federal Rules of Civil Procedure, and established deadlines for the completion of discovery and the filing of dispositive motions. *See generally id.* That order was mailed to plaintiff using the address of the prison facility in which he was confined at the time. *Id.* There is no indication in the court's records that the order was returned as undeliverable. *See generally* Docket Sheet.

On February 19, 2013, the court received plaintiff's written notice that, effective February 14, 2013, his new address was 163 East 95 Street, Apt. 2R, Brooklyn, N.Y. 11212. Dkt. No. 25.[1]

---

[1]     According to publically available records, plaintiff was released from Queensboro Correctional Facility into the custody of the Division of Parole on February 15, 2013. Department of Corrections and Community Supervision,

(continued...)

On April 10, 2013, defendants' counsel issued a notice requiring plaintiff to appear for deposition in Albany, New York on May 30, 2013. McCartin Decl. Exh. A (Dkt. No. 32-3) at 8. According to the annexed declaration of service, the notice was mailed to the plaintiff on April 11, 2013, addressed as follows:

> Donovan Thomas
> Apt. 2R
> 163 East 95th Street
> Brooklyn, NY 11212

*Id* at 9. Plaintiff failed to appear for the deposition on May 30, 2013, however, and made no attempt to contact defendants' attorney, either before or after that date, to advise counsel of his inability to appear for deposition. McCartin Decl. (Dkt. No. 32-2) at ¶ 6.

On June 11, 2013, defendants filed a motion seeking sanctions against plaintiff for his failure to appear for the scheduled deposition. Dkt. No. 32. In their motion defendants specifically request dismissal of plaintiff's complaint pursuant to Rule 37 of the Federal Rules of Civil Procedure. *Id.* Plaintiff responded to defendants' motion on July 1, 2013, in his response, he contends that he was not aware of the court's Rule 16 scheduling order

---

[1](...continued)
http://nysdoccslookup.doccs.ny.gov/ (last visited July 18, 2013).

issued in December 2012, and did not receive defendants' notice of deposition sent in April 2013. Dkt. No. 34 at 2.

The court issued a text notice to the parties scheduling a hearing by telephone for July 9, 2013, to address defendants' motion. Text Notice Dated June 18, 2013. The court's notice directed plaintiff to advise the court and defendants' counsel "well in advance of this conference for [sic] where he can be reached" if the court's records regarding his current telephone number were out of date. *Id.* That text notice was served upon the plaintiff by regular mail, and the court has received no indication that it was returned as undeliverable. *See generally* Docket Sheet.

On the scheduled date of the hearing, defendants' counsel advised the court that he was unable to contact the plaintiff, utilizing either the telephone number listed on the court's records or a second, cell phone number provided by the plaintiff, and further that he has had no contact with plaintiff since the issuance of the text notice on June 18, 2013. Text Minute Entry Dated July 9, 2013. A telephone call placed by chambers' staff to the number on record also went unanswered. *Id.*

II.     <u>DISCUSSION</u>

Defendants' motion implicates two separate provisions of Rule 37 of the

Federal Rules of Civil Procedure. Rule 37(b)(2) provides for a range of sanctions available to a court in the event of a failure to obey a discovery order. Fed. R. Civ. P. 37(b)(2); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 1995). Among those available sanctions is dismissal of an action, in whole or in part. Fed. Civ. P. Rule 37(b)(2)(A)(v); *see Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 196 (E.D.N.Y. July 12, 2010) ("Such sanctions may include . . . dismissing a claim or the entire action or granting default judgment against the disobedient party[.]"). In addition, Rule 37(d) permits the court to issue appropriate sanctions based upon the failure of a party to appear for deposition after being served with a proper notice. Fed. R. Civ. P. 37(d)(1)(A); *see Dixon v. Albany Cnty. Bd. of Elections*, No. 08-CV-0502, 2010 WL 1171225, at *2 (N.D.N.Y. Feb. 18, 2010) (Homer, M.J.), *report and recommendation adopted by* 2010 WL 1171483 (N.D.N.Y. Mar. 22, 2010) (Sharpe, J.), ("Rule 37(d) authorizes the same range of sanctions [offered in Rule 37(b)] against a party for failing to attend his or her deposition.").[2]

In this instance, plaintiff failed to comply with the court's Rule 16 discovery order, which required him to submit to a deposition pursuant to a

---

[2]    All unreported decisions have been appended for the convenience of the *pro se* plaintiff.

notice mailed to him at least fifteen days prior to the scheduled deposition date. Discovery Order (Dkt. No. 21) at 3-4. In addition, he failed to appear for deposition pursuant to a proper notice mailed to him at the address listed in court records. Accordingly, Rule 37 authorizes the issuance of sanctions against plaintiff, which may include dismissal of his complaint.

At the time of the telephone conference on July 9, 2013, I was prepared to provide the plaintiff with one last opportunity to fulfill his obligation to appear for a deposition, out of deference to his *pro se* status, by issuing an order scheduling his deposition for a date certain and specified location. However, in light of plaintiff's failure to comply with the court's directive that he participate in a hearing to address defendants' motion, I conclude that dismissal is now warranted.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, order dismissal of an action based on a plaintiff's failure to comply with an order of the court.[3] Fed. R. Civ. P. 41(b); *Rodriguez v.*

_____

[3] Although Rule 41(b) grants a defendant leave to move for dismissal based on a plaintiff's failure to prosecute or comply with a court order (rather than grant the court explicit authority to dismiss *sua sponte*), "courts retain the 'inherent power' to *sua sponte* 'clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief.'" *Rodriguez*, 2007 WL 4246443, at *2 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962)). Indeed, the local rules of this court recognize this authority, and mandate that the court exercise it under certain circumstances. *See*, *e.g.*, N.D.N.Y. L.R. 41.2(a).

*Goord*, No. 04-CV-0358, 2007 WL 4246443, at *2 (N.D.N.Y. Nov. 27, 2007) (Scullin, J. *adopting report and recommendation by* Lowe, M.J.). That discretion is appropriately exercised when necessary to "achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962); *Williams v. Faulkner*, No. 95-CV-0741, 1998 WL 278288, at *2 (N.D.N.Y. May 20, 1998) (Pooler, J., *adopting report and recommendation by* Scanlon, M.J.); *Moshier v. Trabout*, No. 96-CV-1666, 1998 WL 167298, at *1 (N.D.N.Y. Apr. 2, 1998) (Pooler, J. *adopting report and recommendation by* Hurd, M.J.).

A determination of whether to dismiss an action for failure to prosecute involves consideration of five specific factors, including (1) the duration of plaintiff's failure to comply with court orders; whether plaintiff was on notice that failure to comply would result in dismissal; (3) whether defendant is likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal. *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 193 (2d Cir. 1999) (applying factors in a failure to prosecute action); *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (applying

factors where party failed to comply with order of court). I have carefully evaluated those five factors, and find that they weigh decidedly in favor of dismissal.

This case has been pending for over one year, and it is likely that memories of the events in question have faded, relevant documents have been discarded, and potential witnesses have become unavailable. *See, e.g., Geordiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade."). Moreover, I find that the need to alleviate congestion on the court's docket outweighs plaintiff's right to receive a further chance to be heard in this matter. Finally, I have considered less-drastic sanctions, but reject them. For example, I am persuaded that issuing an order reprimanding plaintiff for his conduct would be futile, given his chronicled history of non-compliance with court directives and defendants' legitimate discovery requests.[4]

---

[4] Similarly, and out of an abundance of caution, I have also considered the factors informing the question of whether a court properly exercised its discretion in issuing sanctions under Rule 37, including "(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the non-compliant party had been warned that noncompliance would be sanctioned." *Guggenheim Capital, LLC v. Birnbaum*, No. 11-CV- 3276, 2013 WL 3491280, at *4, – F.3d ---- (2d Cir. July 15, 2013) (quotation marks and alterations omitted). Here, plaintiff has demonstrated his willful noncompliance inasmuch as he failed to appear at the conference set by the court regarding defendants' motion seeking sanctions, and has failed to provide the court with any explanation for why his mail might not be delivered to him at the

(continued...)

III.    SUMMARY AND RECOMMENDATION

Through his actions, plaintiff has demonstrated a repeated failure to cooperate with both defendants' counsel and the court so that this action can be fairly, efficiently and timely adjudicated on its merits. Based upon plaintiff's failure to comply with the court's order and defendants' notice that he appear for deposition, compounded by his failure to participate in an on-the-record telephone conference to address that failure, I conclude that plaintiff's complaint should be dismissed. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for sanctions (Dkt. No. 32) be GRANTED, and that plaintiff's complaint in this action be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

---

[4](...continued)
address provided to the court. In addition, plaintiff has been on notice that his noncompliance could result in the imposition of sanctions, including dismissal of the action, by virtue of defendants' motion that specifically requests dismissal.

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     July 19, 2013
           Syracuse, NY

Not Reported in F.Supp.2d, 2010 WL 1171225 (N.D.N.Y.)

(Cite as: 2010 WL 1171225 (N.D.N.Y.))



Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

N.D. New York.

Clifton M. DIXON; Justus4us, the Poor People's Campaign, Inc.; Louis W. Brown; Frances Poole; and Cleo B. CArter, Plaintiffs,
v.
ALBANY COUNTY BOARD OF ELECTIONS; Virginia Maffia Tobler; Albany County Democratic Committee; County of Albany; Jaqueline F. Jones; Wanda F. Willingham; James Frezzell; Stephanie Galka; Matthew Galka; and Matthew Clyne, Defendants.
No. 08-CV-502 (GLS/DRH).

Feb. 18, 2010.
Clifton M. Dixon, Albany, NY, pro se.

Samuel N. Iroeghu, Esq., Albany, NY, for Plaintiff Justus4us.

Louis W. Brown, Albany, NY, pro se.

Frances Poole, Albany, NY, pro se.

Cleo B. Carter, Albany, NY, pro se.

Napierski, Vandenburgh & Napierski, L.L.P., Thomas J. O'connor, Esq., ASA S. Neff, Esq., of Counsel, Albany, NY, for Board of Elections defendants.

William J. Conboy, II, Esq., Albany, NY, for Defendant Maffia Tobler.

Crane, Parente & Cherubin, Clemente J. Parente, Esq., of Counsel, Albany, NY, for Defendant Democratic Committee.

Feeney, Centi & Mackey, L. Michael Mackey, Esq., of Counsel, Albany, NY, for Defendant Jones.

DerOhannesian & DerOhannesian, Paul DerOhannesian, II, Esq., Jennifer C. Zegarelli, Esq., of Counsel, Albany, NY, for Defendant Willingham.

**REPORT-RECOMMENDATION AND ORDER**

DAVID R. HOMER, United States Magistrate Judge.
**\*1** Presently pending are the motions of defendants Albany County Board of Elections, County of Albany, James Frezzell, Stephanie Galka, Matthew Galka, and Matthew Clyne (collectively "Board of Elections defendants") and defendant Wanda Willingham ("Willingham") for dismissal of the complaint and other sanctions pursuant to Fed.R.Civ.P. 37 for plaintiffs' various alleged discovery failures and, in particular, the failure to attend depositions. Docket Nos. 86, 106. The other defendants have joined or are deemed to have joined the motions. *See* Docket Nos. 95, 102. Plaintiffs have filed no opposition to the motions. For the reasons which follow, it is recommended that defendants' motions be granted in part and denied in part.[FN1]

> FN1. Among the forms of relief sought by defendants is dismissal of the action. Because dismissal would resolve all issues in the case, it constitutes a dispositive motion for which jurisdiction is reserved to the district court under 28 U.S.C. § 636(b)(1). Accordingly, defendants' motions are deemed referred to the undersigned for report and recommendation pursuant to § 636(b)(1), Fed.R.Civ.P. 72(b), and N.D.N.Y.L.R. 72.1(a).

**I. Plaintiffs' Failure to Respond to the Motions**

Defendants' motions were filed on June 17 and September 30, 2009. Docket Nos. 86, 106. Any response from any plaintiff was required to be filed no later than November 2, 2009. Docket No. 106. No plaintiff filed a response prior to that date. On January 5, 2010, plaintiff

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1171225 (N.D.N.Y.)

(Cite as: 2010 WL 1171225 (N.D.N.Y.))

pro se Clifton M. Dixon ("Dixon") requested and received an extension of fourteen days to file a response. Docket No. 111; Text Order dated 1/6/10. Still, no response has ever been filed by any plaintiff.

Relief "should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). The moving defendants provided such notice in their Notices of Motion here. Docket No. 86, 106. Despite these notices, all plaintiffs failed to respond. "The fact that there has been no response ... does not ... mean that the motion is to be granted automatically." *Champion,* 76 F.3d at 436. Even in the absence of a response, a defendant is entitled to relief only if the material facts demonstrate his or her entitlement to the relief sought as a matter of law. *Id.*

Because all plaintiffs have failed to respond to raise any question of material fact, the facts as set forth in defendants' supporting affirmations (Docket Nos. 86-1, 106-2) are accepted as true. *Adirondack Cycle & Marine, Inc. v. Am. Honda Motor Co.,* No. 00-CV1619, 2002 WL 449757, at *1 (N.D.N.Y. Mar.18, 2002) (McAvoy, J.) (citing *Lopez v. Reynolds,* 998 F.Supp. 252, 256 (W.D.N.Y.1997)); *see also* N.D.N.Y.L.R. 7.1(a)(3) ("The *Court shall deem admitted any facts set forth ... that the opposing party does not specifically controvert.*") (emphasis in original). Accordingly, the facts asserted by the moving defendants in their supporting affirmations will be accepted as true for purposes of their motions.

## II. Background

Dixon was a candidate for Albany County legislator for the Fourth District in 2007 and sought the nominations of the Democratic and Independence Parties in the September primary. Compl. (Docket No. 1) at ¶ 3. Plaintiff Justus4us is a community organization which, *inter alia,* encourages eligible citizens in Albany to register and to vote. *Id.* at ¶ 4. Dixon serves as its President. *Id* . at ¶ 3. Plaintiffs pro se Louis W. Brown ("Brown"), Frances Poole ("Poole", and Cleo B. Carter ("Carter") all reside in the Fourth District and are registered to vote in the Democratic Party. Compl. at ¶¶ 5, 7, 8.[FN2] Defendants Virginia Maffia Tobler and Jaqueline E. Jones were candidates for the Democratic nomination in the Fourth District with Dixon and the remaining

defendants allegedly performed various functions during the September 2007 primary. *Id.* at ¶¶ 9-20. Dixon lost the primary for the Democratic nomination to Maffia Tobler and for the Independence Party to another individual. *Id.* at ¶¶ 130-31. This action followed.

> FN2. Shannon Thomas is identified in the body of the complaint as a plaintiff residing in the Fourth District and registered to vote in the Independence Party. Compl. at ¶ 6. However, Thomas is not listed as a plaintiff in the caption of the complaint, did not sign the complaint, and, therefore, has never been deemed a party to this action. *See* Docket No. 45.

**\*2** Plaintiffs filed their complaint on May 12, 2008 alleging various constitutional defects in the primary election process in violation of the Civil Rights Act of 1965, 42 U.S.C. § 1981 *et seq.* Compl. On September 15, 2008, a conference was held with the Court pursuant to Fed.R.Civ.P. 16, a schedule was set for completion of the case, and a Uniform Pretrial Scheduling Order incorporating that schedule was entered. Docket No. 47. Discovery commenced and on January 26, 2009, the Board of Elections defendants served all individual plaintiffs with notices to take their oral depositions on February 24, 2009. Neff Affirm. (Docket No. 86-1) at ¶¶ 5-7 & Ex. D. The depositions were confirmed by a letter to all parties dated February 20, 2009. *Id.* at ¶ 8 & Ex. E. No plaintiff appeared for the depositions and no plaintiff contacted defendants prior thereto. *Id.* at ¶ 9.

At defendants' request, a conference was held with the Court on March 12, 2009 following which an order was entered compelling plaintiffs Brown, Poole, and Carter to appear for oral deposition on June 1, 2009 at the federal courthouse in Albany. Docket No. 82. The order explicitly advised these plaintiffs that if they again failed to appear for the depositions, the Court could impose sanctions upon them and that the sanctions could include dismissal of their claims. *Id.* The order was mailed to all pro se plaintiffs. Docket entry dated 3/13/09. Defense counsel appeared at the scheduled place and time for the depositions with a retained stenographer, but plaintiffs Brown, Poole, and Carter all failed to appear and without prior notice to any defendant. Neff Affirm. at ¶¶ 14-16, 19 & Ex. I; Zegarelli Affirm. (Docket No. 106-2) at ¶ 15.

Not Reported in F.Supp.2d, 2010 WL 1171225 (N.D.N.Y.)

(Cite as: 2010 WL 1171225 (N.D.N.Y.))

## III. Discussion

Defendants seek sanctions, including dismissal of the complaint, against all plaintiffs pursuant to Fed.R.Civ.P. 37(b) and (d). Rule 37(b) authorizes a range of sanctions against any party who is found to have disobeyed a court order compelling discovery, including an order to appear for a deposition. Rule 37(d) authorizes the same range of sanctions against a party for failing to attend his or her deposition. The range of sanction authorized by both provisions includes deeming facts admitted, precluding evidence, striking pleadings, and dismissing the action. Fed.R.Civ.P. 37(b)(2)(A). It also includes the imposition of costs, including attorney's fees, incurred by the moving party. Fed.R.Civ.P. 37(b)(2)(C). Such costs "must" be imposed against the offending party "unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.*

### A. Brown, Poole, and Carter

Brown, Poole, and Carter each twice failed to appear for their depositions. The second failure to attend of each occurred after an order was entered which (1) compelled each of these defendants to appear for his or her deposition at the date, time, and place specified in the order, and (2) warned the defendants as follows:

**\*3 EACH PLAINTIFF SHALL FURTHER TAKE NOTICE** that if he or she fails to serve responses to the County defendants' outstanding interrogatories or document demands or fails to appear for his or her oral deposition as directed in this order, sanctions will be imposed as allowed by Fed.R.Civ.P. 37(b) and (d). These sanctions may include, among others, dismissal of this action as to any such plaintiff. If an action is dismissed against any plaintiff, there will be no trial or other further proceedings, judgment in this case will be entered in favor of the defendants, and that plaintiff will have lost the right to bring the claims asserted in this action against these defendants in any future action.

Docket No. 82 at 2-3 (emphasis in original). The order was mailed to each plaintiff at the addresses they provided and none were returned undelivered. Docket entry dated 3/13/09.

Brown, Poole, and Carter have offered no reason for their failure twice to appear for their depositions and the failures leave each in contempt of this Court's order. Further, defendants have been prejudiced by these plaintiffs' failures both by being denied needed discovery from three of the parties asserting claims against them and by the incurring of costs for the time of the attorneys in appearing for the depositions and preparing the present motions. The imposition of sanctions are, therefore, appropriate. The only reasonable sanction available appears to be dismissal of these plaintiffs' claims. The lesser sanctions of admissions and preclusion of evidence would lead effectively to the same result. Such admissions and preclusions would leave defendants able to obtain judgment as a matter of law given these plaintiffs' complete failure to provide any discovery.[FN3] Accordingly, it is recommended as a sanction for the failures of Brown, Poole, and Carter that each be dismissed with prejudice as a plaintiff in this action pursuant to Rule 37(b)(2)(A)(5).

> **FN3.** All three plaintiffs also failed to respond to interrogatories despite being compelled to do so. *See* Docket No. 82 at 2; Zegarelli Affirm. at ¶¶ 13, 14.

As to the imposition of costs against these plaintiffs, the awarding of such costs is mandatory under Rule 37 unless the failure was substantially justified or other circumstances would render an award unjust. No facts appear which might justify any plaintiff's failure here. The only circumstance which appears which might make an award unjust is plaintiffs' pro se status. However, plaintiffs paid the full filing fee, have never sought *in forma pauperis* status, and have never otherwise claimed or demonstrated indigence. *See* Docket No. 1 (noting the payment of the full filing fee). In the absence of the demonstration of facts rising to the level of injustice, such an award must be made here. *See Valentine v. Museum of Modern Art,* 29 F.3d 47, 50 (2d Cir.1994) (per curiam) ("The severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding pro se, so long as a warning has been given that noncompliance can result in dismissal."); *Minotti v. Lensink,* 895 F.2d 100, 103 (2d Cir.1990) (" 'all litigants, including pro ses, have an obligation to comply with court orders' ") (quoting *McDonald v. Head Criminal Court Supervisor Officer,*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1171225 (N.D.N.Y.)

(Cite as: 2010 WL 1171225 (N.D.N.Y.))

850 F.2d 121, 124 (2d Cir.1988)).

**\*4** Only counsel for the Board of Elections defendants and Willingham have submitted affirmations as to the costs they incurred as a result of these plaintiffs' failures. These defendants seek an award for stenographic costs, attorney time preparing for and attending the depositions, preparing the present motions, and photocopying and mailing costs. Neff Affirm. at ¶¶ 20-22; Zegarelli Affirm. at ¶¶ 18-23. All such costs appear to follow directly from the failures of Brown, Poole, and Carter to appear for the depositions and should be allowed.

As to the amounts claimed, the stenographic costs were borne by the Board of Elections defendants in the amount of $150. Neff Affirm. at ¶ 18. The Board of Elections defendants further seek an award for 23.7 hours of attorney time at the hourly rate of $95 for a total of $2,251.50. Neff Affirm., Ex. J (Docket No. 86-11) at 2. The hourly rate is well within the range of reasonableness in this district. *See, e.g.,* Picinich v. United Parcel Serv., No., 2008 WL 1766746, at *2 (N.D.N.Y. Apr.14, 2008) (noting that hourly rates up to $210 had been found reasonable in this district). However, the total hours claimed appear excessive in several respects, including the amount of time required to prepare for the depositions of Brown, Poole, and Carter, and the amount of time required to draft pleadings. Therefore, the total amount of time claimed should be reduced from 23.7 hours to fourteen hours. Multiplying the fourteen hours times the hourly rate of $95 yields an amount of $1,330 in attorneys fees which should be awarded to the Board of Elections defendants. Adding the stenographic costs, the Board of Elections defendants are entitled to total costs of $1,480.

Willingham seeks an award of costs for attorney's totaling $1,710 for nine hours at an hourly rate of $190.00. Zegarelli Affirm. at ¶ 19 & Ex. I (Docket No. 106-11). Willingham also seeks an award of $60 for costs incurred in photocopying and mailing her motion papers to the pro se plaintiffs. Zegarelli Affirm. at ¶ 22 & nn. 4, 5. As to the hourly rate, Willingham's counsel asserts that "[m]y average billing rate for this time period was $190.00 per hour." *Id.* at ¶ 21. However, her counsel fails to state the rate she charged Willing ham here or, indeed, if any fee was charged at all. Even if Willingham's counsel represents her without fee in this case, however, counsel is entitled to an award of fees at a reasonable rate for the time wasted when Brown, Poole, and Carter failed to attend their depositions and in making this motion. In the absence of evidence from Willingham as to the hourly rate actually charged here, the rate charged by the Board of Elections defendants for the same services will be utilized as a guidepost for the reasonable rate to which Willingham's counsel is entitled. Thus, an hourly rate of $95 will be applied here as well. The hours claimed appear excessive as to legal research, where Willingham enjoyed the benefit of access to the memorandum of law filed earlier on the same issues by the Board of Elections defendant, and the preparation of pleadings and should be reduced to six hours. The photocopying and mailing costs appear reasonable and should be allowed as claimed. Thus, an award should be made to Willingham for attorney's fees of $570 (six hours at a rate of $95 per hour) plus photocopying and mailing costs of $60 for a total of $630.

### B. Dixon and Justus4us

**\*5** Dixon, individually and as President of Justus4us, appeared for his deposition and was deposed by defendants. The only basis asserted for imposing sanctions against him is Willingham's contention that he bears partial responsibility for the failure of Brown, Poole, and Carter to attend their depositions because, as lead plaintiff,[FN4] it was Dixon's responsibility to advise the other plaintiffs of their need to appear for the depositions and insure their attendance. *See* Willingham Mem. of Law (Docket No. 106-1) at 4. First, defendants have made no showing that Dixon failed to communicate with Brown, Poole, or Carter concerning the depositions. Second, Brown, Poole, and Carter were each notified of the dates, times and place of their depositions by the Court order which was mailed to them and not returned undelivered. Accordingly, no sufficient basis has been shown for imposing sanctions against either Dixon or Justus4us.

> FN4. In an order filed September 15, 2008, Dixon was "designated Lead Plaintiff and shall serve as the representative and contact person on behalf of the plaintiffs...." Docket No. 48 at 1.

### C. Allocation Among Plaintiffs

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1171225 (N.D.N.Y.)

(Cite as: 2010 WL 1171225 (N.D.N.Y.))

The depositions of Brown, Poole, and Carter were scheduled for the same date, time, and place and were to occur in turn. The costs incurred by the Board of Elections defendants and Willingham thus resulted equally from the failures of Brown, Poole, and Carter to attend their depositions. The costs should thus be shared equally by the three plaintiffs and none should be responsible for more than his or her share. Accordingly, the costs imposed should be allocated equally among the three plaintiffs. Brown, Poole, and Carter should each be ordered to pay (1) $493.33 to the Board of Elections defendants and (2) $210 to Willingham.

### IV. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the motions of the Board of Elections defendants and Willingham for sanctions against plaintiffs for the failure of Brown, Poole, and Carter to attend their depositions (Docket Nos. 86, 106) be:

1. **GRANTED** as to Brown, Poole, and Carter as follows:

A. Brown, Poole, and Carter be **DISMISSED** with prejudice from this action as plaintiffs;

B. Brown be ordered to pay the Board of Elections defendants at total of $493.33 and Willingham a total of $210; and

C. Poole be ordered to pay the Board of Elections defendants at total of $493.33 and Willingham a total of $210; and

D. Carter be ordered to pay the Board of Elections defendants at total of $493.33 and Willingham a total of $210; and

2. **DENIED** as to Dixon and Justus4us in all respects.[FN5]

> **FN5.** A conference will be ordered to establish a schedule for completion of the case fter the district court has issued a final decision on these recommendations.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2010.

Dixon v. Albany County Bd. of Elections
Not Reported in F.Supp.2d, 2010 WL 1171225 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1171483 (N.D.N.Y.)

(Cite as: 2010 WL 1171483 (N.D.N.Y.))



Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff
and not assigned editorial enhancements.**

United States District Court,

N.D. New York.

Clifton M. DIXON; Justus4us, the Poor People's
Campaign, Inc.; Louis W. Brown; Frances Poole; and
Cleo B. Carter, Plaintiffs,
v.
ALBANY COUNT BOARD OF ELECTIONS; Virginia
Maffia Tobler; Albany County Democratic Committee;
County of Albany; Jaqueline F. Jones; Wanda F.
Willingham; James Frezzell; Stephanie Galka; Matthew
Galka; and Matthew Clyne, Defendant.
Civil Action No. 1:08–cv–502 (GLS/DRH).

March 22, 2010.

Clifton M. Dixon, Albany, NY, pro se.

Office of Samuel N. Iroegbu, Samuel N. Iroegbu, Esq., of
Counsel, Albany, NY, for Plaintiff Justus4us.

Louis W. Brown, Albany, NY, pro se.

Frances Poole, Albany, NY, pro se.

Cleo B. Carter, Albany, NY, pro se.

Napierski, Vandenburgh & Napierski L.L.P., Thomas J.
O'connor, Esq., Asa S. Neff, Esq., of Counsel, Albany,
NY, for Board of Elections defendants.

Office of William J. Conboy, II, William J. Conboy, II,
Esq., of Counsel, Albany, NY, for Defendant Maffia
Tobler.

Crane, Parente & Cherubin, Clemente J. Parente, Esq., of
Counsel, Albany, NY, for Defendant Democratic
Committee.

Feeney, Centi & Mackey, L. Michael Mackey, Esq., of
Counsel, Albany, NY, for Defendant Jones.

DerOhannesian & DerOhannesian, Paul Derohannesian,
II, Esq., Jennifer C. Zegarelli, Esq., of Counsel, Albany,
NY, for Defendant Willingham.

*ORDER*

GARY L. SHARPE, District Judge.
   **\*1** The above-captioned matter comes to this court
following a Report–Recommendation by Magistrate Judge
David R. Homer, duly filed February 18, 2010. Following
ten days from the service thereof, the Clerk has sent the
file, including any and all objections filed by the parties
herein.

   No objections having been filed, and the court having
reviewed the Magistrate Judge's Report–Recommendation
for clear error, it is hereby

   ORDERED, that the Report–Recommendation of
Magistrate Judge David R. Homer filed February 18, 2010
is ACCEPTED in its entirety for the reasons state therein,
and it is further

   ORDERED, that the motions of the Board of
Elections defendants and Willingham for sanctions against
plaintiffs for the failure of Brown, Poole, and Carter to
attend their depositions (Dkt.Nos.86, 106) is:

   1. **GRANTED** as to Brown, Poole, and Carter as
follows:

   A. Brown, Poole and Carter are **DISMISSED** with
prejudice from this action as plaintiffs;

   B. Brown is ordered to pay the Board of Elections
defendants a total of $493.33 and Willingham a total
of $210; and

   C. Poole is ordered to pay the Board of Elections
defendants a total of $493.33 and Willingham a total

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1171483 (N.D.N.Y.)

(Cite as: 2010 WL 1171483 (N.D.N.Y.))

of $210; and

    D. Carter is ordered to pay the Board of Elections defendants a total of $493.00 and Willingham a total of $210; and

2. DENIED as to Dixon and Justus4us in all respects; and it is further

    ORDERED, that the case is referred to the Magistrate Judge to schedule a conference to establish a schedule for completion of the case, and it is further

    ORDERED, that the Clerk of the court serve a copy of this order upon the parties in accordance with this court's local rules.

    IT IS SO ORDERED.

N.D.N.Y.,2010.

Dixon v. Albany Count Bd. of Elections
Not Reported in F.Supp.2d, 2010 WL 1171483 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Jose RODRIGUEZ, Plaintiff,
v.
Glen S. GOORD, et al, Defendants.
No. 9:04-CV-0358 (FJS/GHL).

Nov. 27, 2007.
Jose Rodriguez, Willard, NY, pro se.

Andrew M. Cuomo, Attorney General of the State of New York, David L. Cochran, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

### DECISION AND ORDER

FREDERICK J. SCULLIN, Senior District Judge.

**\*1** The above-captioned matter having been presented to me by the Report-Recommendation of Magistrate Judge George H. Lowe filed November 6, 2007, and the Court having reviewed the Report-Recommendation and the entire file in this matter, and no objections to said Report-Recommendation having been filed, the Court hereby

**ORDERS,** that Magistrate Judge Lowe's November 6, 2007 Report-Recommendation is **ACCEPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS,** that Defendants' motion, pursuant to Local Rule 41.2(b), to dismiss for Plaintiff's failure to provide notice to the Court of a change of address, is **GRANTED;** and the Court further

**ORDERS,** that the Clerk of the Court enter judgment in favor of the Defendants and close this case.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Generally, Jose Rodriguez ("Plaintiff") alleges that, while he was an inmate at Oneida Correctional Facility in 2003 and 2004, ten employees of the New York State Department of Correctional Services ("Defendants") were deliberately indifferent to his serious medical needs, and subjected him to cruel and unusual prison conditions, in violation of the Eighth Amendment. (Dkt. No. 27 [Plf.'s Am. Compl.].) Currently pending is Defendants' motion to dismiss for failure to provide notice to the Court of a change of address, pursuant to Local Rule 41.2(b) of the Local Rules of Practice for this Court. (Dkt. No. 86.) Plaintiff has not opposed the motion, despite having been given more than six weeks in which to do so. Under the circumstances, I recommend that (1) Defendants' motion to dismiss be granted, and (2) in the alternative, the Court exercise its inherent authority to *sua sponte* dismiss Plaintiff's Amended Complaint for failure to prosecute and/or failure to comply with an Order of the Court.

### I. DEFENDANTS' MOTION TO DISMISS

Under the Local Rules of Practice for this Court, Plaintiff has effectively "consented" to the granting of Defendants' motion to dismiss, since (1) he failed to oppose the motion, (2) the motion was properly filed, and (3) Defendants have, through the motion, met their burden of demonstrating entitlement to the relief requested in the motion. L.R. 7.1(b)(3).

In particular, with regard to this last factor (i.e., that Defendants have met their burden of demonstrating entitlement to the relief requested), Defendants argue that their motion to dismiss should be granted because (1) Local Rule 41.2(b) provides that "[f]ailure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))

action," (2) on April 15, 2004, Plaintiff was specifically advised of this rule when (through Dkt. No. 5, at 4) the Court advised Plaintiff that "his failure to [promptly notify the Clerk's Office and all parties or their counsel of any change in his address] will result in the dismissal of his action," (3) on May 22, 2007, Plaintiff was released from the Willard Drug Treatment Center, (4) since that time, Plaintiff has failed to provide notice to the Court (or Defendants) of his new address, as required by Local Rule 10.1(b)(2), and (5) as a result of this failure, Defendants have been prejudiced in that they have been unable to contact Plaintiff in connection with this litigation (e.g., in order to depose him, as authorized by the Court on May 4, 2007). (Dkt. No. 86, Part 4, at 1-2 [Defs.' Mem. of Law].)

**\*2** Authority exists suggesting that an inquiry into the third factor (i.e., whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1[b][3] ) is a more limited endeavor than a review of a contested motion to dismiss.[FN1] Specifically, under such an analysis, the movant's burden of persuasion is lightened such that, in order to succeed, his motion need only be "facially meritorious." [FN2] Given that Defendants accurately cite the law and facts in their memorandum of law, I find that they have met their lightened burden on their unopposed motion. Moreover, I am confident that I would reach the same conclusion even if their motion were contested.

> FN1. *See, e.g., Hernandez v. Nash,* 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at \*7-8, 2003 WL 22143709 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*" [emphasis added; citations omitted]; *Race Safe Sys. v. Indy Racing League,* 251 F.Supp.2d 1106, 1109-10 (N.D.N.Y.2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3] ); *see also Wilmer v. Torian,* 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at \*2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1

[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at \*2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95-CV-0989, 1996 U.S. Dist. LEXIS 15072, at \*3 (N.D.N.Y. Aug. 27, 1996) (Hurd, J.), *adopted by* 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.).

> FN2. *See, e.g., Hernandez,* 2003 U.S. Dist. LEXIS 1625 at \*8.

For these reasons, I recommend that the Court grant Defendants' motion to dismiss.

## II. *SUA SPONTE* DISMISSAL

Even if Defendants have not met their burden on their motion to dismiss, the Court possesses the inherent authority to dismiss Plaintiff's Amended Complaint *sua sponte* under the circumstances. Rule 41 of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a proceeding for (1) failure to prosecute the action and/or (2) failure to comply with the Federal Rules of Civil Procedure or an Order of the Court. Fed.R.Civ.P. 41(b).[FN3] However, it has long been recognized that, despite Rule 41 (which speaks only of a *motion* to dismiss on the referenced grounds, and not a *sua sponte* order of dismissal on those grounds), courts retain the "inherent power" to *sua sponte* "clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also Saylor v. Bastedo,* 623 F.2d 230, 238 (2d Cir.1980); *Theilmann v. Rutland Hospital, Inc.,* 455 F.2d 853, 855 (2d Cir.1972). Indeed, Local Rule 41.2(a) not only recognizes this authority but *requires* that it be exercised in appropriate circumstances. *See* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge *shall* order it dismissed.") [emphasis added].

> FN3. Fed.R.Civ.P. 41(b) (providing, in pertinent part, that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))

order of court, a defendant may move for dismissal of an action or of any claim against the defendant").

**A. Failure to Prosecute**

With regard to the first ground for dismissal (a failure to prosecute the action), it is within the trial judge's sound discretion to dismiss for want of prosecution.[FN4] The Second Circuit has identified five factors that it considers when reviewing a district court's order to dismiss an action for failure to prosecute:

FN4. *See Merker v. Rice,* 649 F.2d 171, 173 (2d Cir.1981).

[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.[FN5]

FN5. *See Shannon v. GE Co.,* 186 F.3d 186, 193 (2d Cir.1999) (affirming Rule 41[b] dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) [citation and internal quotation marks omitted].

**\*3** As a general rule, no single one of these five factors is dispositive.[FN6] However, I note that, with regard to the first factor, Rule 41.2 of the Local Rules of Practice for this Court provides that a "plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y. L.R. 41.2(a). In addition, I note that a party's failure to keep the Clerk's Office apprised of his or her current address may also constitute grounds for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure.[FN7]

FN6. *See Nita v. Conn. Dep't of Env. Protection,* 16 F.3d 482 (2d Cir.1994).

FN7. *See, e.g., Robinson v. Middaugh,* 95-CV-0836, 1997 U.S. Dist. LEXIS 13929, at *2-3, 1997 WL 567961 (N.D.N.Y. Sept. 11, 1997) (Pooler, J.) (dismissing action under Fed.R.Civ.P. 41[b] where plaintiff failed to inform the Clerk of his change of address despite having been previously ordered by Court to keep the Clerk advised of such a change); *see also* N.D.N.Y. L.R. 41.2(b) ("Failure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action.").

Here, I find that, under the circumstances, the above-described factors weigh in favor of dismissal. The duration of Plaintiff's failure is some six-and-a-half months, i.e., since April 22, 2007, the date of the last document that Plaintiff attempted to file with the Court (Dkt. No. 85). Plaintiff received adequate notice (e.g., through the Court's above-referenced Order of April 15, 2004, and Defendants' motion to dismiss) that his failure to litigate this action (e.g., through providing a current address) would result in dismissal. Defendants are likely to be prejudiced by further delays in this proceeding, since they have been waiting to take Plaintiff's deposition since May 4, 2007. (Dkt. No. 84.) I find that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this action.[FN8] Finally, I have considered all less-drastic sanctions and rejected them, largely because they would be futile under the circumstances (e.g., an Order warning or chastising Plaintiff may very well not reach him, due to his failure to provide a current address).

FN8. It is cases like this one that delay the resolution of other cases, and that contribute to the Second Circuit's dubious distinction as having (among the twelve circuits, including the D.C. Circuit) the longest median time to disposition for prisoner civil rights cases, between 2000 and 2005 (9.8 months, as compared to a national average of 5.7 months). Simply stated, I am unable to afford Plaintiff with further special solicitude without impermissibly burdening the Court and unfairly tipping the scales of justice against Defendant.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)

(Cite as: 2007 WL 4246443 (N.D.N.Y.))

**B. Failure to Comply with Order of Court**

With regard to the second ground for dismissal (a failure to comply with an Order of the Court), the legal standard governing such a dismissal is very similar to the legal standard governing a dismissal for failure to prosecute. "Dismissal ... for failure to comply with an order of the court is a matter committed to the discretion of the district court." [FN9] The correctness of a dismissal for failure to comply with an order of the court is determined in light of five factors:

> FN9. *Alvarez v. Simmons Market Research Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir.1988) [citations omitted].

(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.[FN10]

> FN10. *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996) [citations omitted].

Here, I find that, under the circumstances, the above-described factors weigh in favor of dismissal for the same reasons as described above in Part II.A. of this Report-Recommendation. I note that the Order that Plaintiff has violated is the Court's Order of April 15, 2004, wherein the Court ordered Plaintiff, *inter alia,* to keep the Clerk's Office apprised of his current address. (Dkt. No. 5, at 4.) Specifically, the Court advised plaintiff that *"[p]laintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do same will result in the dismissal of this action."* (*Id.*) I note also that, on numerous previous occasions in this action, Plaintiff violated this Order, resulting in delays in the action. (*See* Dkt. Nos. 47, 48, 49, 50, 54, 59, 72, 78, 79 & Dkt. Entry for 12/15/06 [indicating that mail from the Court to Plaintiff was returned as undeliverable.])

**\*4** As a result, I recommend that, should the Court decide to deny Defendants' motion to dismiss, the Court exercise its authority to dismiss Plaintiff's Amended Complaint *sua sponte* for failure to prosecute and/or failure to comply with an Order of the Court.

**ACCORDINGLY,** for the reasons stated above, it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 86) be *GRANTED%;* and it is further

**RECOMMENDED** that, in the alternative, the Court exercise its inherent authority to *SUA SPONTE DISMISS* Plaintiff's Amended Complaint for failure to prosecute and/or failure to comply with an Order of the Court.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e)..

N.D.N.Y.,2007.

Rodriguez v. Goord
Not Reported in F.Supp.2d, 2007 WL 4246443 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1998 WL 278288 (N.D.N.Y.)

(Cite as: 1998 WL 278288 (N.D.N.Y.))

Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Larry WILLIAMS, Plaintiff,
v.
Faulkner, Capt., Clinton Correctional Facility; R. Carey,
Lieutenant, Clinton Correctional Facility; D.A.
Senkowski, Superintendent; Wright, Sergeant, Clinton
Correctional Facility; Philip Coombe; Elson,
Correctional Officer; R.J. Mahuta, Correctional Officer,
Defendants.
No. 95–CV–741 (RSP/DS).

May 20, 1998.

Larry Williams, Southport Correctional Facility, Pine
City, for Plaintiff, pro se.

Dennis C. Vacco, New York Attorney General, Attorney
for Defendants, Albany, David Fruchter, Esq., Assistant
Attorney General, of Counsel.

ORDER

POOLER, D.J.
**\*1** Plaintiff, Larry Williams, alleges defendants
violated his rights under the First, Eighth, and Fourteenth
Amendments and the Religious Freedom Restoration Act
by confiscating and destroying his Islamic flag and other
items. Compl., Dkt. No. 1, ¶ II. Defendants moved for
summary judgment on August 24, 1995. Dkt. No. 13.
Williams moved to amend the complaint and for
appointment of counsel. Dkt. No. 15. By order and
report-recommendation dated January 3, 1996, Magistrate
Judge Daniel Scanlon recommended I grant defendants'
motion for summary judgment and deny Williams's
motions. Dkt. No. 21. On January 8, 1996, after having
mailed a copy of this order to the parties, the Clerk's Office
received notice from Williams of a change in his address.
Dkt. No. 22. Assuming that Williams had not received a
copy of the report-recommendation due to this change, on
September 16, 1997, the Court mailed another copy of the
report-recommendation to Williams at his new address.
Dkt. No. 24. On September 18, 1997, this mailing was
returned to the court as undeliverable and marked "return
to sender—released 4/21/97."
     In a report-recommendation filed April 24, 1998, the
magistrate judge recommended I dismiss this action
pursuant to Local Rule 41.2(b) due to Williams's failure to
keep the Court apprised of his most recent address and
deny defendants' summary judgment motion as moot. Dkt.
No. 26. After carefully reviewing the
report-recommendation and the entire file herein, I
conclude that the magistrate judge's recommendation is
not clearly erroneous. It is therefore

     ORDERED that the report-recommendation is
adopted, this action dismissed, and defendants' summary
judgment motion denied as moot.

SCANLON, Magistrate J.

     ORDER and REPORT–RECOMMENDATION
     The complaint in this civil rights matter was filed May
30, 1995.
     Plaintiff alleges violation of his rights under the First,
Eighth and Fourteenth Amendments and the Religious
Freedom Restoration Act when his Islamic flag and other
items were confiscated and destroyed.

     Plaintiff seeks declaratory, compensatory and punitive
damages.

*Background:*

     Defendants filed a Motion for Summary Judgment on
August 24, 1995 (dkt.13). Plaintiff filed a motion on
September 28, 1995, to Amend the Complaint and for
Appointment of Counsel (dkt.15), and opposition to
defendants' motion.
     By Order and Report–Recommendation of January 3,
1996, the undersigned denied plaintiff's Motion to Amend
and Appointment of Counsel request, and recommended
that defendants' Motion for Summary Judgment be
granted.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 278288 (N.D.N.Y.)

(Cite as: 1998 WL 278288 (N.D.N.Y.))

A copy of such Order and Report–Recommendation was mailed to the parties on January 3, 1996. Plaintiff's change of address was received January 8, 1996, advising the court of his address change to Southport Correctional Facility, P.O. Box 2000, Pine City, N.Y. 14871.

By the Court's letter, mailed certified/return receipt, to plaintiff of September 16, 1997 he was advised that the Order and Report–Recommendation was mailed to the parties five days prior to his change of address receipt by the court. Therefore, the court assumed that plaintiff did not receive a copy of the Order and Report–Recommendation and re-served same with the letter. Plaintiff was given ten (10) days from the receipt of the court's letter to file any objections to this Magistrate Judge's Order and Report–Recommendation. On September 18, 1997, this mailing was returned to the Court as undeliverable to plaintiff at such address with the notation "return to sender—released 4/21/97".

Discussion:

**\*2** Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may at its discretion dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. *Link v. Wabash Railroad County Independent School District,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). This power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases. See *Rodriguez v. Walsh,* 1994 U.S. Dist. LEXIS 278 (S.D.N.Y. January 13, 1994) (citations omitted). Moreover, a plaintiff has the duty to inform the court of any address change. As this district recently stated:

It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected

by those inquiries if made in writing.

*Dansby v. Albany County Correctional Facility.* 95–CV–1515, 1996 WL 172699,\*1 (Apr. 10, 1996)(quoting *Perkins v. King,* 84–3310 slip op. at 4 (5th Cir. May 19, 1985)(other citations omitted); see *generally* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

Upon recent inquiry of the Attorney General's office of the current Assistant Attorney General handling this matter, we were advised the current Asst. Attorney General is David Fruchter, Esq. WHEREFORE, it is,

ORDERED, that the clerk amend the name of the defendants' counsel in this matter to David Fruchter, Esq., and since this matter cannot proceed without notification to the court by plaintiff of a current and valid address, and plaintiff having failed to do so, it is hereby,

RECOMMENDED, that defendants' motion for summary judgment, (dkt.13) be deemed moot, and it is,

RECOMMENDED, that this action be dismissed, pursuant to Local Rule 41.2(b) (dismissal of action appropriate where plaintiff fails to notify the court of change of address, by order of the Hon. Rosemary S. Pooler, United States District Judge.

The Clerk is directed to forward this Order and Report–Recommendation to the Hon. Rosemary S. Pooler, without waiting the normal ten (10) day period [FN1] for opposition to this Recommendation.

FN1. The most recent address for plaintiff is inadequate for the court's use. The court's latest correspondence to plaintiff at the Southport Correctional Facility was returned as noted in the above Order and Report–Recommendation.

N.D.N.Y.,1998.

Williams v. Faulkner
Not Reported in F.Supp., 1998 WL 278288 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 278288 (N.D.N.Y.)

(Cite as: 1998 WL 278288 (N.D.N.Y.))

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 167298 (N.D.N.Y.)

(Cite as: 1998 WL 167298 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Donald L. MOSHIER, Jr. Plaintiff,
v.
Marshall TRABOUT, Dr., M.D., Health Services
Director at Cayuga Correctional Facility; Jack Keiser,
M.D.; Patrick Buttarazzi, M.D., Defendants.
No. 96–CV–1666 (RSP/DNH).

April 2, 1998.
Donald L. Moshier, Jr., Oneida Correctional Facility,
Rome, for Plaintiff, Pro Se.

Dennis C. Vacco, New York State Attorney General,
Attorneys for Defendants, State of New York, Albany,
Gregory J. Rodriguez, Esq., Assistant Attorney General,
of Counsel.

ORDER

POOLER, D.J.

**\*1** The above matter comes to me following an order
and report-recommendation by Magistrate Judge David N.
Hurd, duly filed on the 6th day of March, 1998. Dkt. No.
18. Following ten days from the service thereof, the clerk
has sent me the entire file, including any and all
objections. No party filed objections.

The magistrate judge recommended that I dismiss
Moshier's lawsuit because he has failed to inform the court
of his current address. Several documents sent to plaintiff
have been returned as undeliverable, including a copy of
the March 6, 1998, report-recommendation. *See* Dkt. No.
19. As the magistrate judge correctly noted, I advised
Moshier in a previous order of his duty to inform the court
of any address change and the consequences of his failure
to do so. Dkt. No. 6 at 7. In addition, plaintiff in the past
has demonstrated his ability to inform the court of an
address change. *See* Dkt. Nos. 4 & 5. Because Moshier
has failed to comply with this requirement, I dismiss the
complaint pursuant to Local Rule 41.2(b).

Therefore, after reviewing the entire file in this
matter, it is

ORDERED that the report-recommendation is
approved, and

ORDERED that the complaint is dismissed pursuant
to Local Rule 41 .2(b), and it is further

ORDERED that the clerk serve a copy of this order
upon the parties by regular mail.

IT IS SO ORDERED.

HURD, Magistrate J.

ORDER and REPORT–RECOMMENDATION
*I. Background*
This civil rights action was commenced by the
plaintiff on October 15, 1996.
On September 8, 1997, the undersigned issued a
Pretrial Scheduling Order regarding this action, which
Order was thereafter served on the parties hereto by
regular mail. On September 11, 1997, such Order, which
was mailed to plaintiff's last known residence, was
returned to the Court as undeliverable to plaintiff at such
address, marked "Return to Sender. Released." *See* docket
no. 16. Since that time, other correspondence that has been
sent to plaintiff from the Clerk's office relating to this
action has been similarly returned to the Court as
undeliverable to plaintiff at his last known address. *See*
docket no. 17.

*II. Discussion*

Rule 41(b) of the Federal Rules of Civil Procedure
provides that a court may, in its discretion, dismiss an
action based upon the failure of a plaintiff to prosecute an
action or comply with any order of the court. *Link v.
Wabash Railroad County Independent School District,
370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).* This
power to dismiss may be exercised when necessary to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 167298 (N.D.N.Y.)

(Cite as: 1998 WL 167298 (N.D.N.Y.))

achieve orderly and expeditious disposition of cases. *See Freeman v. Lundrigan,* No. 95–CV–1190, 1996 WL 481534, *1 (N.D.N.Y., Aug. 22, 1996) (Pooler, J.) (citing *Rodriguez v. Walsh,* No. 92–Civ–3398, 1994 WL 9688, *1 (S.D.N.Y., Jan.14, 1994)* (other citations omitted)).

Moreover, a plaintiff has the duty to inform the court of any address changes. As Judge Pooler has stated:

It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

**\*2** *Dansby v. Albany Cty. Corr. Facility,* No. 95–CV–1525, 1996 WL 172699, *1 (Apr. 10, 1996) (quoting *Perkins v. King,* No. 84–3310, slip op. at 4 (5th Cir. May 19, 1985) (other citations omitted)); *see generally* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

Additionally, plaintiff was previously advised by District Judge Rosemary S. Pooler that plaintiff was required to promptly notify the Clerk's Office of any change in his address, and that his failure to keep such office apprised of his current address would result in the dismissal of the instant action. See docket no. 6 at 7.

This matter cannot proceed without notification to the Court by the plaintiff of his current address. Therefore, the undersigned recommends that this action be dismissed pursuant to Local Rule 41.2(b).

WHEREFORE, based upon the above, it is hereby

RECOMMENDED, that this action be dismissed pursuant to Local Rule 41.2(b) (dismissal of action appropriate where plaintiff fails to notify Court of change of address), and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e) and 72.

IT IS SO ORDERED.

N.D.N.Y.,1998.

Moshier v. Trabout
Not Reported in F.Supp., 1998 WL 167298 (N.D.N.Y.)
END OF DOCUMENT


--- F.3d ----, 2013 WL 3491280 (C.A.2 (N.Y.))

(Cite as: 2013 WL 3491280 (C.A.2 (N.Y.)))

Only the Westlaw citation is currently available.

United States Court of Appeals,

Second Circuit.
GUGGENHEIM CAPITAL, LLC, Guggenheim
Partners, LLC, Plaintiffs–Appellees,
v.
David BIRNBAUM, aka David B. Guggenheim,
Defendant–Appellant,
Catarina Pietra Toumei, Aka Lady Catarina Pietra
Toumei, Aka Catarina Frederick, Vladimir Zuravel, Aka
Vladimir Guggenheim, Aka Vladimir Z. Guggenheim,
Aka Vladimir Z. Guggenheim Bank, Eli Pichel, Theodor
Pardo, John Does, 1–10, Dabir International, Ltd.,
Defendants.[FN*]
Docket No. 11–3276–cv.

Argued: April 12, 2013.
Decided: July 15, 2013.

**Background:** Financial services firm and its parent
company brought action alleging infringement of
registered "Guggenheim" trademarks against competitor
who presented himself as "David B. Guggenheim" when
soliciting investors to buy financial products. After
defendant failed to answer complaint or comply with
discovery orders and violated preliminary injunction
against his use of "Guggenheim" mark, plaintiffs moved
for default judgment. The United States District Court for
the Southern District of New York, Gardephe, J., granted
motion. Defendant appealed.

**Holdings:** The Court of Appeals, Chin, Circuit Judge,
held that:

(1) default judgment was final decision, and thus Court of
Appeals had jurisdiction over appeal therefrom;

(2) district court acted within its discretion in entering
default judgment as sanction for competitor's willful
disobedience of discovery orders; and

(3) district court acted within its discretion in entering
default judgment against competitor for willfully failing to

plead or otherwise defend action.

Affirmed.

West Headnotes

**[1] Federal Courts 170B** 0

170B Federal Courts

Issues relating to subject matter jurisdiction may be
raised at any time, even on appeal, and even by the court
sua sponte.

**[2] Federal Courts 170B** 0

170B Federal Courts

Court of Appeals' subject matter jurisdiction over
appeals from final decisions does not permit appeals, even
from fully consummated decisions, where they are but
steps towards final judgment in which they will merge. 28
U.S.C.A. § 1291.

**[3] Federal Courts 170B** 0

170B Federal Courts

District court's decision is "final," providing Court of
Appeals with jurisdiction over appeal therefrom, if the
decision ends the litigation on the merits and leaves
nothing for the court to do but execute the judgment. 28
U.S.C.A. § 1291.

**[4] Federal Courts 170B** 0

170B Federal Courts

Default judgment against financial services firm's
competitor was final decision, and thus Court of Appeals
had jurisdiction over appeal therefrom, although judgment
did not rule on complaint's Racketeer Influenced and
Corrupt Organizations Act (RICO) and fraud claims, but

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

only on trademark claims alleging competitor infringed firm's registered "Guggenheim" trademarks; district court terminated all outstanding motions and ordered case closed, and firm would suffer no prejudice if default judgment was treated as final, as firm had not prosecuted any claims in two years since default judgment was entered. 18 U.S.C.A. § 1961 et seq.; 28 U.S.C.A. § 1291.

**[5]** **Federal Civil Procedure 170A** ⬤═══ 0

170A Federal Civil Procedure

Certain remedies for discovery violations, such as dismissing a complaint or entering judgment against a defendant, are severe sanctions, but they may be appropriate in extreme situations, as when a court finds willfulness, bad faith, or any fault on the part of the noncompliant party. Fed.Rules Civ.Proc.Rule 37, 28 U.S.C.A.

**[6]** **Federal Courts 170B** ⬤═══ 0

170B Federal Courts

Court of Appeals generally reviews an entry of a default judgment for abuse of discretion.

**[7]** **Federal Courts 170B** ⬤═══ 0

170B Federal Courts

When assessing a district court's exercise of its discretion in entering default judgment against a party for discovery violations, Court of Appeals generally looks to: (1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the non-compliant party had been warned that noncompliance would be sanctioned. Fed.Rules Civ.Proc.Rule 37(b)(2)(A)(vi), 28 U.S.C.A.

**[8]** **Federal Courts 170B** ⬤═══ 0

170B Federal Courts

District court acted within its discretion in entering default judgment against financial services firm's pro se competitor as sanction for willful disobedience of

discovery orders, in action alleging competitor infringed firm's registered "Guggenheim" trademarks; competitor had demonstrated history of non-compliance with court orders, despite receiving numerous extensions to permit his participation in discovery, and district court's regular and frequent warnings were sufficient to put competitor on notice serious sanctions were imminent, although phrase "default judgment" was not used. Fed.Rules Civ.Proc.Rule 37(b)(2)(A)(vi), 28 U.S.C.A.

**[9]** **Federal Civil Procedure 170A** ⬤═══ 0

170A Federal Civil Procedure

District court is obliged to provide adequate notice of a default judgment as a discovery sanction against a party proceeding pro se. Fed.Rules Civ.Proc.Rule 37(b)(2)(A)(vi), 28 U.S.C.A.

**[10]** **Attorney and Client 45** ⬤═══ 0

45 Attorney and Client

Except when faced with the prospect of imprisonment, a litigant has no legal right to counsel in civil cases.

**[11]** **Federal Courts 170B** ⬤═══ 0

170B Federal Courts

District court acted within its discretion in requiring financial services firm's competitor to cite supporting case law to justify his invocation at deposition of his Fifth Amendment privilege against self-incrimination, in action alleging competitor infringed firm's registered "Guggenheim" trademarks; competitor had history of ignoring district court directives, and he had unilaterally failed to cooperate at depositions or to provide requested discovery. U.S.C.A. Const.Amend. 5.

**[12]** **Federal Courts 170B** ⬤═══ 0

170B Federal Courts

District court acted within its discretion in denying stay of financial services firm's trademark-infringement

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3491280 (C.A.2 (N.Y.))

(Cite as: 2013 WL 3491280 (C.A.2 (N.Y.)))

action against competitor pending resolution of competitor's related criminal charge of wire fraud; any testimony offered by competitor during civil suit could have undermined invocation of his Fifth Amendment privilege in criminal case, and criminal prosecution would have protected interests of both consumers and firm, but competitor was never indicted, he repeatedly failed to comply with discovery orders before criminal complaint was filed, and firm had strong interest in resolving civil case to prevent customer confusion. U.S.C.A. Const.Amend. 5.

**[13]** Federal Civil Procedure 170A ⌇⌐ 0

170A Federal Civil Procedure

Good-cause standard for relief from default judgment requires a court to weigh: (1) the willfulness of default; (2) the existence of any meritorious defenses; and (3) prejudice to the non-defaulting party. Fed.Rules Civ.Proc.Rule 55, 28 U.S.C.A.

**[14]** Federal Courts 170B ⌇⌐ 0

170B Federal Courts

District court acted within its discretion in entering default judgment against financial services firm's pro se competitor for willfully failing to plead or otherwise defend action alleging competitor infringed firm's registered "Guggenheim" marks; competitor received complaint, court's orders, and notice of default judgment, but he never answered complaint and even disregarded preliminary injunction against his use of mark, and competitor had no meritorious defense, despite his contention alleged infringement was fair use of his rightful name, as "Guggenheim" was not competitor's surname and there was no evidence he was related to Guggenheim family. Fed.Rules Civ.Proc.Rule 55, 28 U.S.C.A.

**[15]** Trademarks 382T ⌇⌐ 0

382T Trademarks

In resolving fair-use defense to claim of trademark infringement under Lanham Act, court reviews whether a particular use was: (1) other than as a mark; (2) in a

descriptive sense; and (3) in good faith. Lanham Act, § 33(b)(4), 15 U.S.C.A. § 1115(b)(4).

Appeal from a default judgment entered by the United States District Court for the Southern District of New York (Gardephe, *J.*) against defendant-appellant for his failure to comply with court orders. We conclude that the district court did not abuse its discretion in entering the default judgment. AFFIRMED.John J. Dabney (Rita Weeks, Kevin M. Bolan, on the brief), McDermott Will & Emery LLP, Washington, District of Columbia, and Boston, Massachusetts, for Plaintiffs–Appellees.

Ronald D. Coleman, Goetz Fitzpatrick LLP, New York, NY, for Defendant–Appellant.

Before KEARSE and CHIN, Circuit Judges, and HALL, District Judge. [FN**]

CHIN, Circuit Judge.

**\*1** Defendant-appellant David Birnbaum solicited investors to buy various financial products while presenting himself as "David B. Guggenheim." Plaintiffsappellees are entities with rights or licenses to registered trademarks bearing the "Guggenheim" name. They filed suit alleging trademark infringement and other federal and state law claims. Birnbaum never answered the complaint, failed to comply with the district court's discovery orders, disrupted his own deposition, and violated-on at least two occasions-a preliminary injunction precluding use of the "Guggenheim" mark. Finally, upon plaintiffs' request, the district court entered a default judgment against Birnbaum. Birnbaum appeals. As we conclude that the district court was within its discretion to enter a default judgment pursuant to both Rule 37 and Rule 55 of the Federal Rules of Civil Procedure, we affirm.

### *BACKGROUND*

**A.** *The Facts*
**1.** *The Parties*

Plaintiff-appellee Guggenheim Partners, LLC ("Partners") provides global investment services and various financial products. It and its predecessors-in-interest have provided similar services for

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

the past fifty years. With investment assets exceeding $110 billion, it is a well-known financial services entity. Partners is a wholly-owned subsidiary of plaintiff-appellee Guggenheim Capital, LLC ("Capital" and, together with Partners, the "Guggenheim LLCs").

The Guggenheim LLCs are affiliated with the well-known Guggenheim family. Capital owns (and licenses to Partners) the common law rights and the registered trademarks for various "Guggenheim" marks. In light of the longstanding market presence of the Guggenheim LLCs, potential investors identify the registered "Guggenheim" marks with the financial services provided by the Guggenheim LLCs (and their predecessors-in-interest).

Birnbaum is a New York resident who, since the 1970s, has sought investors for investment opportunities by presenting himself as "David B. Guggenheim." He claims a relationship with the Guggenheim family on his mother's side, but provided no evidence to corroborate the relationship during the proceedings below.

### 2. *Initial Court Orders*

On November 22, 2010, the Guggenheim LLCs filed a complaint against Birnbaum alleging trademark infringement pursuant to 15 U.S.C. § 1114(1)(a), other federal trademark claims pursuant to 15 U .S.C. §§ 1114 and 1125, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to 18 U.S.C. § 1962(c), and various state law claims.<sup>FN1</sup> The district court (Marrero, *J.)* granted, *ex parte,* an order authorizing expedited discovery and temporarily restraining Birnbaum from "us[ing] the Guggenheim Capital, LLC and Guggenheim Partners, LLC names and trademarks in any way relevant to this matter." Order 2, Nov. 22, 2010, ECF No. 3. The Guggenheim LLCs had also requested a preliminary injunction; on December 17, 2010, after a hearing at which Birnbaum appeared but filed no opposition, the district court (Gardephe, *J.)* converted the temporary restraining order into a preliminary injunction.

### 3. *Violations of Discovery Orders*

**\*2** After the complaint was filed, although Birnbaum appeared in the litigation, he did not respond to the expedited discovery requests. The district court gave Birnbaum an extension, but Birnbaum did not meet this first extension either. At a conference on January 13, 2011, the district court warned Birnbaum that he must comply with the court's discovery orders and also put this order in writing.

Despite Birnbaum's non-compliance, the district court granted him two more extensions to answer or amend his responses to the interrogatories and to produce the documents requested by the Guggenheim LLCs. Birnbaum, again, provided no substantive responses, responding to each request by invoking the Fifth Amendment privilege. On February 1, 2011, the district court again warned Birnbaum about his behavior, by directing him to show cause as to "why contempt sanctions should not be imposed for his failure to respond to Plaintiffs' discovery requests as ordered by this Court." Order to Show Cause, Feb. 1, 2011, ECF No. 58. On February 7, 2011, Birnbaum responded, requesting a stay and asserting that, because he had justifiably invoked privilege, the court was precluded from imposing civil contempt sanctions.

On February 8, 2011, the Guggenheim LLCs tried to depose Birnbaum, but he refused to answer any questions. During a telephone conference that same day, the district court directed Birnbaum to participate in discovery in accordance with its instructions. Moreover, in an order issued two days later, the district court reiterated the warning, stating that "[a]ny further improper disruption of the deposition will not be tolerated, and sanctions will be imposed on the Defendant and his counsel in the event that the conduct that took place on February 8, 2011 is repeated." Order 2–3, Feb. 10, 2011, ECF No. 66.

### 4. *Violations of Preliminary Injunction*

Notwithstanding the issuance of the temporary restraining order and preliminary injunction, Birnbaum continued using the "Guggenheim" name and mark. In mid-December, Birnbaum met with a potential investor while posing as "David B. Guggenheim," chairman of "Guggenheim Bank." At a December 30, 2010 contempt hearing, the district court stated that its "patience is wearing thin here. It's wearing very thin." Default J. Against Defs. David Birnbaum & Dabir Int'l Ltd. 3, ECF No. 103 (internal quotation marks omitted). The district

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3491280 (C.A.2 (N.Y.))

(Cite as: 2013 WL 3491280 (C.A.2 (N.Y.)))

court then warned Birnbaum that if he continued to use the "Guggenheim" name, "the consequences [were] going to be very very severe." Id. (internal quotation marks omitted).

Weeks later, Birnbaum again solicited an investor while presenting himself as "David Guggenheim," this time in connection with an oil transaction. The district court issued another order to show cause as to "why contempt sanctions should not be imposed for [Birnbaum's] alleged failure to comply with this Court's preliminary injunction order." FN2 Order to Show Cause, Mar. 7, 2011, ECF No. 85.

B. *Entry of Default Judgment*

**\*3** On February 14, 2011, rather than filing an answer, Birnbaum moved to dismiss the complaint for failure to state a claim. The district court granted the motion, in part, dismissing a cyberpiracy claim, but allowed most of the claims to proceed. Birnbaum did not thereafter file an answer to the remaining claims, as the district court had directed.

At an April 4, 2011 show cause hearing, which addressed Birnbaum's violation of the preliminary injunction, the Guggenheim LLCs requested a default judgment due to his "willful contempt over and over and over and over again." Hr'g Tr. 4:18–19, Apr. 4, 2011, ECF No. 99–4. The district court provided Birnbaum with an opportunity to respond, but Birnbaum, who was no longer represented by counsel, invoked his Fifth Amendment privilege.FN3 It then described Birnbaum's "overall obstruction of the discovery process" and observed that his conduct persisted "despite several orders I have issued, despite admonitions, despite warnings that it has to stop." Id. at 8:11–12, 8:16–17.

On April 14, 2011, the Guggenheim LLCs moved for a default judgment pursuant to Rule 55, as well as injunctive relief, statutory damages, and costs and attorneys' fees. Birnbaum filed no opposition. Three months later, on July 15, 2011, the district court entered a default judgment against Birnbaum, permanently enjoined him from using the "Guggenheim" name or mark, awarded the Guggenheim LLCs statutory damages in the amount of $1.25 million pursuant to 15 U.S.C. § 1117(c), and ordered him to pay reasonable costs and attorneys' fees.

This appeal followed.

### *DISCUSSION*

On appeal, Birnbaum contends that the district court abused its discretion by granting a default judgment in favor of the Guggenheim LLCs. For the reasons described below, we reject this argument. Before we reach the merits of his argument, however, we first address our jurisdiction to hear this claim.

A. *Jurisdiction*

1. *Applicable Law*

[1] "Issues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court *sua sponte.*" *Cave v. E. Meadow Union Free Sch. Dist.,* 514 F.3d 240, 250 (2d Cir.2008). We have subject matter jurisdiction over appeals from the "final decisions" of U.S. district courts. 28 U.S.C. § 1291. Thus, we must "determine whether the district court intended the judgment to represent the final decision in the case." *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 385 n. 6, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978).

[2][3] Section 1291 does not "permit appeals, even from fully consummated decisions, where they are but steps towards final judgment in which they will merge." *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). A decision, however, is final if it " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Leftridge v. Conn. State Trooper* Officer # 1283, 640 F.3d 62, 66 (2d Cir.2011) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). We have also concluded that a decision is final when "the court clearly intends to close the case, i.e., to enter a final judgment." *Ellender v. Schweiker,* 781 F.2d 314, 318 (2d Cir.1986) (treating court's decision on collateral issues as final judgment though it did not reference order adjudicating all claims on merits); *cf. also Houbigant, Inc. v. IMG Fragrance Brands, LLC,* 627 F.3d 497, 498 (2d Cir.2010) (per curiam) (no final judgment where a particular case was marked "closed" but district court continued resolving related and consolidated cases); *Vona v. Cnty. of Niagara,* 119 F.3d 201, 206 (2d

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3491280 (C.A.2 (N.Y.))

(Cite as: 2013 WL 3491280 (C.A.2 (N.Y.)))

Cir.1997) (holding order was appealable judgment because case was marked "closed," indicating that district court intended order to be final judgment).

**2.** *Application*

**\*4** [4] The complaint alleged, in addition to federal and state trademark claims, a RICO violation and fraud. The district court's default judgment specifically identified that the action had been brought under the Lanham Act and RICO, but only ruled on the federal and state trademark claims.[FN4] Hence, although neither party briefed the issue, at first glance, it appears that two claims may have survived the district court's default judgment, raising a question as to the finality of that judgment.

At oral argument on appeal, both parties indicated that they understood the default judgment to be the final decision on the merits as to all of the claims raised by the Guggenheim LLCs. The district court, moreover, intended the same; after making certain ancillary rulings, it terminated all outstanding motions and ordered the case closed. *Cf. Ellender, 781 F.2d at 317* (concluding that judgment was final appealable decision when clerk was informed that judgment closed the case). The docket reflects no further involvement by the district court in this case. *Cf. Houbigant, Inc., 627 F.3d at 498.*

We further note that, in the nearly two years since the district court entered its default judgment, aside from defending the appeal, the Guggenheim LLCs have declined to further prosecute any claims (to the extent any remained outstanding). Hence, they would suffer no prejudice by our treating the default judgment as final. Mindful that we are directed to give a "practical rather than a technical construction" to *section 1291, Cohen, 337 U.S. at 546,* we conclude that the default judgment entered against Birnbaum dismissed the RICO and fraud claims against Birnbaum without prejudice.[FN5] Hence, the judgment was a final decision, and we have subject matter jurisdiction over this appeal.

**B.** *Default Judgment Under Rule 37*

Turning to the merits, we conclude that, notwithstanding Birnbaum's arguments to the contrary, in light of Birnbaum's numerous discovery violations, the district court did not abuse its discretion by entering a default judgment pursuant to Rule 37.[FN6]

**1.** *Applicable Law*

[5] "If a party ... fails to obey an order to provide or permit discovery," the district court may impose sanctions, including "rendering a default judgment against the disobedient party." Fed.R.Civ.P. 37(b)(2)(A)(vi). Certain Rule 37 remedies—dismissing a complaint or entering judgment against a defendant—are severe sanctions, but they may be appropriate in "extreme situations," as "when a court finds willfulness, bad faith, or any fault on the part of the" noncompliant party. *Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir.1990)* (internal citation and quotation marks omitted).

[6][7] We generally review an entry of a default judgment for abuse of discretion. *See Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)* (per curiam) ("The question, of course, is not whether ... the Court of Appeals[ ] would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing."); *see also S. New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 143 (2d Cir.2010).* When assessing a district court's exercise of its discretion pursuant to Rule 37, we generally look to "(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the. noncompliance; and (4) whether the non-compliant party had been warned" that noncompliance would be sanctioned. *Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir.2009)* (per curiam) (quotation omitted); *see also Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 852–53 (2d Cir.1995).*

**2.** *Application*

**a.** *Entry of Default Judgment*

**\*5** [8] The district court found that Birnbaum's intransigence spanned months, and that less serious sanctions would have been futile. Birnbaum raises no legitimate challenge to these findings, and we find no error in these conclusions or findings of fact, particularly in light of his failure to answer the complaint or oppose the motion for default judgment. *See Vt. Teddy Bear Co. v. 1–800 Beargram Co. ., 373 F.3d 241, 246 (2d Cir.2004)* ("[A] default is an admission of all wellpleaded allegations

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3491280 (C.A.2 (N.Y.))

(Cite as: 2013 WL 3491280 (C.A.2 (N.Y.)))

against the defaulting party."). Hence, we focus on the willfulness of Birnbaum's default and the sufficiency of the warnings he received.

### i. *Willfulness*

The district court found that Birnbaum had willfully disobeyed its discovery orders. It made this finding after recounting numerous extensions provided to permit Birnbaum's participation throughout the discovery process. It further noted that Birnbaum had not complied with written and oral discovery-related court orders, before it found that Birnbaum had "a demonstrated history of willful non-compliance with court orders." Default J. 9, ECF No.103; *see also Shcherbakovskiy v. Da Capo Al Fine,* Ltd., 490 F.3d 130, 135 (2d Cir.2007) (noting "district courts possess 'wide discretion' in imposing sanctions under Rule 37" but declining to enter default judgment without explanation supporting the sanction). *But see Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir.1979) (failure to comply may be excused if defendant made "good faith efforts to comply" or if compliance was "thwarted by circumstances beyond his control"). Given Birnbaum's sustained recalcitrance, this finding was not clearly erroneous.

### ii. *Warnings for Non–Compliance*

Birnbaum contends that he was not sufficiently warned of the consequences of a default judgment. He argues that a more thorough warning was necessary as he appeared without counsel during the April 4, 2011 hearing when the default judgment was discussed. In light of the record as a whole, this argument is without merit.

[9] Our Rule 37 precedents hold that a court abuses its discretion if it dismisses a case without first warning a *pro se* party of the consequences of failing to comply with the court's discovery orders. *See Valentine v. Museum of Modern Art,* 29 F.3d 47, 48, 50 (2d Cir.1994) (per curiam). We have no analogous precedent in the default judgment context, but even entries of default judgments against counseled clients require sufficient notice. *See Reilly v. NatWest Mkts. Grp. Inc.,* 181 F.3d 253, 270 (2d Cir.1999) ("Due process requires that courts provide notice and an opportunity to be heard before imposing *any* kind of sanctions." (alteration, citation, and internal quotation marks omitted)). *See generally Sieck v. Russo,*

869 F.2d 131, 133, 134 (2d Cir.1989) (affirming entry of a default judgment against defendants who were warned that "a default judgment *will* be entered against them" if they failed to appear (internal quotation marks omitted)). Both dismissal and entry of default judgment, however, are serious, case-terminating, Rule 37 sanctions; hence, a court is similarly obliged to provide adequate notice of a default judgment as a sanction against a party proceeding *pro se.*[FN7]

**\*6** In light of this obligation, we must assess whether the district court's warnings—which mentioned sanctions, but never the phrase "default judgment"—were sufficient. By comparison, in *Valentine v. Museum of* Modern Art, we concluded that a district court had sufficiently warned the *pro se* defendant where the court read and explained relevant portions of Rule 37 on the record before ultimately dismissing the case. 29 F.3d at 48. Here, the district court's warnings were not so specific, but it warned Birnbaum regularly and often; throughout the case, Birnbaum received six separate warnings. First, at a January 13, 2011 conference, the district court verbally warned Birnbaum that he had to participate in discovery as ordered, then issued a written order outlining Birnbaum's discovery obligations. Second, in a February 1, 2011 order to show cause, the district court directed Birnbaum to explain "why contempt sanctions should not be imposed for his failure to respond to Plaintiffs' discovery requests as ordered by this Court." Order to Show Cause, ECF No. 58. Third, in a February 8, 2011 telephone call, the district court orally chastised Birnbaum for practices relating to his deposition. Fourth, by its February 10, 2011 order, the district court emphasized that sanctions would be imposed for "[a]ny further improper disruption of the deposition ." Order 2–3, ECF No. 66. Fifth, the Guggenheim LLCs requested their default judgment in open court, with Birnbaum present. Sixth, after describing Birnbaum's numerous efforts to delay the proceedings, the district court stated that "we have reached the point in the proceedings where I need to take action." Hr'g Tr. 8:19–20. And finally, Birnbaum was served with a copy of the Guggenheim LLCs' order to show cause for default judgment, and a proposed default judgment was filed on the docket.[FN8] Birnbaum did not oppose the default judgment.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3491280 (C.A.2 (N.Y.))

(Cite as: 2013 WL 3491280 (C.A.2 (N.Y.)))

Viewed as a whole, Birnbaum cannot credibly argue that he was not sufficiently warned that serious sanctions were imminent. *See S. New Eng. Tel. Co.,* 624 F.3d at 144 ("The district court is free to consider 'the full record in the case in order to select the appropriate [Rule 37] sanction.' " (citation omitted)). This conclusion is reinforced by the fact that Birnbaum was not a *pro se* litigant in the traditional sense. While unrepresented during the final April 4 hearing, he was counseled for most of the proceedings below and also had an attorney in the parallel criminal case at the time he received the district court's final warning. We therefore conclude that the numerous warnings Birnbaum received—both while represented by counsel and not—were, collectively, sufficient to place him on notice of the pending default judgment. And, we similarly conclude that the district court's decision to enter a default judgment against Birnbaum was not an abuse of its discretion.

**b.** *Further Allegations of Abuse of Discretion*

**\*7** Birnbaum further contends that the district court abused its discretion by (1) denying him civil counsel for the April 4, 2011 hearing, (2) sanctioning him for invoking the Fifth Amendment privilege, and (3) denying a stay of the civil case pending resolution of a related criminal charge of wire fraud. None of these arguments undermines our conclusion that the district court's entry of default judgment was no abuse of discretion.

[10] First, it is well-settled that, except when faced with the prospect of imprisonment, a litigant has no legal right to counsel in civil cases. *See Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir.1986); *In re Di Bella,* 518 F.2d 955, 958–59 (2d Cir.1975) (witness threatened with jail time entitled to counsel in civil contempt proceeding). Thus, although, as described above, he *was* represented for most of the proceedings, Birnbaum was not *entitled* to counsel in this civil case.

[11] Second, the district court never prohibited Birnbaum from invoking the Fifth Amendment. Rather, it merely indicated that, when asserting this right, Birnbaum had to cite supporting case law to justify invoking the privilege. As the Fifth Amendment privilege is not absolute, Birnbaum would still be obliged to provide, *inter alia,* exculpatory responses or non-incriminating

responsive documents. *See, e.g., Fisher v. United States,* 425 U.S. 391, 409–11, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) (Fifth Amendment "protects a person only against being incriminated by his own compelled testimonial communications"); *Kastigar v. United States,* 406 U.S. 441, 444–45, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (privilege applies in civil proceedings only to disclosures reasonably believed to be used against defendant in a criminal case). Given Birnbaum's history of ignoring district court directives, unilateral failure to cooperate at depositions, and failure to provide the requested discovery, the district court's instruction was not an abuse of discretion.

[12] Third, the district court was well within its discretion to deny a stay. Although the Constitution, in certain cases, may require that civil proceedings be stayed pending the resolution of a parallel criminal case, "a plausible constitutional argument would be presented only if, at a minimum, denying a stay would cause substantial prejudice to the defendant." *Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 100 (2d Cir.2012) (citation and internal quotation marks omitted). Granted, two factors favored granting a stay: (1) any testimony offered by Birnbaum during the civil suit could have undermined an attempt to invoke the Fifth Amendment privilege in the criminal case, and (2) the criminal prosecution would have similarly protected the interests of consumers and the Guggenheim LLCs. *See id.* at 101.

Other factors, however, favored denying the stay. Although a criminal complaint had been filed in the case, Birnbaum was never indicted.[FN9] *See id.* at 101. In addition, he had repeatedly failed to comply with the district court's discovery orders (not to mention the preliminary injunction) by the time the criminal complaint was filed. *See id.* at 102 ("plainly dilatory tactics" preceding criminal indictment weighed against granting stay). Moreover, the Guggenheim LLCs had a strong interest in resolving the civil case—to prevent additional investors from being duped by "David B. Guggenheim" or "David Guggenheim" and to limit the negative impact on their brand. *See id.* at 103–04. Finally, the court was entitled to manage its docket. *See id.* at 104.

**\*8** Birnbaum had no absolute right to "a stay of civil

--- F.3d ----, 2013 WL 3491280 (C.A.2 (N.Y.))

(Cite as: 2013 WL 3491280 (C.A.2 (N.Y.)))

proceedings pending the outcome of criminal proceedings," *Kashi v. Gratsos,* 790 F.2d 1050, 1057 (2d Cir.1986) (quotation omitted), and he has not met the "heavy" burden of demonstrating an abuse of discretion, *see Louis Vuitton* Malletier S.A., 676 F.3d at 100. "A party who flouts [discovery] orders does so at his peril." *Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d 67, 73 (2d Cir.1988). And, as the district court made findings that satisfied the four *Agiwal* factors, viewing the record as a whole, we conclude that it did not abuse its discretion by entering a default judgment against Birnbaum as a discovery sanction under Rule 37.

#### C. *Default Judgment Under Rule 55*

Even if we were to assume that default judgment under Rule 37 was, for some reason, improper, we conclude that the entry of the default judgment under Rule 55 was certainly supported by the record.

#### 1. *Applicable Law*

Under Rule 55, a party defaults when he "has failed to plead or otherwise defend" the case at hand. Fed.R.Civ.P. 55(a). "We have embraced a broad understanding of the phrase 'otherwise defend.' " *City of N.Y. v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 129 (2d Cir.2011); *see also Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981) (defendant failed to "otherwise defend" by "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial"); *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 917–19 (3d Cir.1992) (affirming Rule 55 default judgment against defendants who filed answer and actively litigated pretrial discovery but did not comply with discovery orders or appear for trial), *cited with favor in Mickalis Pawn Shop,* 645 F.3d at 130. A party may apply to the district court for entry of a default judgment against a party that has defaulted. Fed.R.Civ.P. 55(b)(2) (further requiring written notice to opposing party who has appeared in case).

[13] As under Rule 37, we review the district court's grant of a default judgment under Rule 55 for abuse of discretion. *See, e.g., Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 243 (2d Cir.1994). A party challenging the entry of a default judgment must satisfy the "good cause shown" standard in Rule 55(c). *See id.;*

see also Fed.R.Civ.P. 55(c) ("The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."). This standard requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party. *Davis v. Musler,* 713 F.2d 907, 915 (2d Cir.1983); *cf. New York v. Green,* 420 F.3d 99, 108 (2d Cir.2005) (applying Rule 55(c) standard when reviewing decision on motion for reconsideration).

#### 2. *Application*

[14] We conclude that because the default was willful and Birnbaum presented no meritorious defense, entry of default judgment under Rule 55 did not constitute an abuse of discretion.

#### a. *Willfulness of Default*

**\*9** Birnbaum does not deny that he received the complaint, the court's orders, or the notice of default judgment, or that he never answered the complaint. Likewise, he does not contend that his non-compliance was due to circumstances beyond his control. These and other circumstances support an inference of willful default. *See* Commercial Bank of Kuwait, 15 F.3d at 243 (agreeing that "inference of willful default [was] justified" where defendants received actual notice of complaint and were not prevented by outside factors from timely answering (internal quotation marks omitted)).

We concluded above that the district court did not clearly err in finding that Birnbaum had willfully violated its discovery orders. Support for a finding of willful default is equally strong under Rule 55, where the willful violations of the district court's discovery orders may be construed as a failure to defend. *See Mickalis Pawn Shop,* 645 F.3d at 130. Furthermore, Birnbaum's two separate attempts to solicit investors while presenting himself as "David B. Guggenheim," in violation of the district court's preliminary injunction, reflect a general disregard for the orders of the district court and provide context for the willfulness of his discovery violations. We therefore conclude that the district court was presented with a plethora of evidence to support its finding that Birnbaum willfully defaulted.

#### b. *Meritorious Defense*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3491280 (C.A.2 (N.Y.))

(Cite as: 2013 WL 3491280 (C.A.2 (N.Y.)))

Birnbaum contends that his use of the name "Guggenheim" constitutes fair use of his rightful name. Because his conduct plainly fails to satisfy the elements of a legitimate fair use defense, even if the district court erred by not specifically addressing this defense, we conclude that his asserted defense fails.

The Federal Rules of Civil Procedure provide that, in a responsive pleading, a party must "state in short and plain terms its defenses to each claim asserted against it." Fed.R.Civ.P. 8(b)(1)(A). Moreover, the party must "admit or deny the allegations asserted against it by an opposing party." *Id.* 8(b)(1)(B). When a responsive pleading is required, a failure to deny allegations will result in those allegations (except to the extent they relate to damages) being deemed admitted. *Id. 8(b)(6); see also, e.g., Cotton v. Slone,* 4 F.3d 176, 181 (2d Cir.1993); Au Bon Pain Corp., 653 F.2d at 65.

To the extent a complaint alleges trademark infringement, a defendant may rebut the claim by asserting various statutory defenses. *See* 15 U.S.C. § 1115(b). When an alleged infringer asserts the fair use defense, he asserts, in relevant part, that

the use of the name ... charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, ... which is descriptive of and used fairly and in good faith only to describe the goods or services of such party.

[15] *Id.* § 1115(b)(4). "[ R ] esolution of a fair-use defense requires the court to focus on the defendant's (actual or proposed) use." *JA Apparel Corp. v. Abboud,* 568 F.3d 390, 403 (2d Cir.2009). In so doing, a court reviews whether a particular use was "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.* ("EMI"), 228 F.3d 56, 64 (2d Cir.2000); *see also* 815 Tonawanda Street Corp. v. Fay's Drug Co., 842 F.2d 643, 648 (2d Cir.1988) (noting that surnames, for trademark analysis purposes, are treated as descriptive terms).

*10 Even if we assumed that the district court erred by not explicitly assessing the merits of Birnbaum's fair use defense, any such error would be harmless. As part of the conjunctive test to assess fair use, a reviewing court must determine whether, in part, a challenged use was "in good faith." *EMI,* 228 F.3d at 64. The district court, after examining documentary evidence of Birnbaum's attempt to solicit investors, concluded that he had employed counterfeit marks similar to Plaintiffs' famous "Guggenheim" marks. It further concluded that Birnbaum acted in bad faith by deciding "to offer and sell services that are identical or nearly identical to those offered under Plaintiffs' famous Guggenheim Marks," thereby intending to confuse the public. Default J. ¶ 50. Finally, the district court held that Birnbaum's use of the marks was "a bad faith attempt to trade off of the goodwill and reputation of Plaintiffs' famous marks." *Id.* ¶ 51. These findings are not clearly erroneous.

Birnbaum seems to suggest that his use of the "Guggenheim" name, which predated the registration of the earliest of the "Guggenheim" marks in 2006, undermines the district court's finding of bad faith. We do recognize "that one's surname given at birth creates associations attached to that name which identify the individual." *Brennan's, Inc. v. Brennan's Rest., L.L.C.,* 360 F.3d 125, 131 (2d Cir.2004); *see also Taylor Wine Co. v. Bully Hill Vineyards, Inc.,* 569 F.2d 731, 734 (2d Cir.1978) (recognizing that courts historically deferred to individual use of own name in trade). We nevertheless acknowledge "the unfairness of letting one person trade on the reputation or the name of another." *Brennan's, Inc.,* 360 F.3d at 131.

"Guggenheim," however, is *not* Birnbaum's surname. Birnbaum presented no evidence below supporting his assertion that he was, indeed, related to the Guggenheim family, and the district court found that "David B. Guggenheim" and "David Guggenheim" were both aliases. Birnbaum's bald assertions to the contrary are not sufficient to render those findings clearly erroneous. *Cf. Shechter v. Comptroller of the City of N.Y.,* 79 F.3d 265, 270 (2d Cir.1996) ("[D]efenses which amount to nothing more than mere conclusions of law ... have no efficacy." (quotation omitted)). As we have concluded in the past, "it would end all protection to trade names, if all one had to do in order to pirate them, was to change one's own name to that of one's intended victim, or to one near enough to his to be no more than a deceptive variant." *Societe*

--- F.3d ----, 2013 WL 3491280 (C.A.2 (N.Y.))

(Cite as: 2013 WL 3491280 (C.A.2 (N.Y.)))

*Vinicole de Champagne v. Mumm,* 143 F.2d 240, 241 (2d Cir.1944) (per curiam). And, as Birnbaum has "abandon[ed] his family name, and [chosen] another for his convenience, it is reasonable to charge him with whatever prejudice to others that may cause; certainly when, as here, he knows what that prejudice will be ." *Id.* Hence, we conclude that his defense of fair use was destined to fail because the district court found that Birnbaum had not used the mark in good faith. *See EMI,* 228 F.3d at 66; *see also TCPIP Holding Co. v. Haar Commc'ns Inc.,* 244 F.3d 88, 103–04 (2d Cir.2001) (viewing *EMI* factors as conjunctive and declining to consider whether finding of bad faith would have also precluded fair use due to Court's holding that defendant's use of name was "as a mark").

* * *

**\*11** We recognize that "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases." *Nat'l Hockey* League, 427 U.S. at 643 (noting both penalization and general deterrence rationales for severe sanctions). In this "appropriate" case, the district court did not abuse its discretion by entering a default judgment against Birnbaum.

### CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

> FN\* The Clerk of the Court is directed to conform the caption to the above.

> FN\*\* The Honorable Janet C. Hall, of the United States District Court for the District of Connecticut, sitting by designation.

> FN1. On January 11, 2011, the Guggenheim LLCs filed a First Amended Complaint to add Dabir International, Ltd. as a defendant. They then filed a Second Amended Complaint on January 14, 2011 to incorporate allegations about defendants' attempt to file a trademark under the "Guggenheim" name with the U.S. Patent and Trademark Office.

> FN2. Furthermore, the district court learned that a company had filed an application with the U.S. Patent and Trademark Office to register the "Guggenheim" name for an alleged vodka company. The application, however, also described the alleged vodka company as a financial services entity. Birnbaum asserted below that one of his co-defendants, on behalf of a corporate entity that shared Birnbaum's home address, had submitted the application without his knowledge. The district court appears to have credited Birnbaum's response as the default judgment does not attribute this to Birnbaum personally.

> FN3. Birnbaum had requested pro bono counsel for the hearing, but the application was denied on the basis that Birnbaum had not established a meritorious defense.

> FN4. Separately, the district court had dismissed the cyberpiracy claim.

> FN5. The district court never made the requisite findings of "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity" needed to prove a civil RICO violation. *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 119 (2d Cir.2013) (quotation omitted) (requiring, in addition, injury to business or property resulting from RICO violation). Nor did the default judgment address each of the elements of fraud under New York law: (1) a false representation as to a material fact; (2) intent to deceive plaintiff; (3) justifiable reliance by plaintiff; and (4) pecuniary loss. *See, e.g., Ross v. Louise Wise Servs., Inc.,* 8 N.Y.3d 478, 488, 836 N.Y.S.2d 509, 868 N.E.2d 189 (2007).

> FN6. The Guggenheim LLCs only moved for a default judgment pursuant to Rule 55. Most of the orders disregarded by Birnbaum, however, were discovery orders, and the district court's default judgment decision applied a standard applicable in a Rule 37 context. The Guggenheim LLCs' memorandum in support of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3491280 (C.A.2 (N.Y.))

(Cite as: 2013 WL 3491280 (C.A.2 (N.Y.)))

their motion for default judgment also cited to the same Rule 37 case as the default judgment decision. *See Am. Cash Card Corp. v. AT & T Corp.,* 184 F.R.D. 521, 524 (S.D.N.Y.1999). Moreover, both parties, at oral argument, discussed the default judgment, in part, as a discovery sanction. Hence, we address the district court's entry of default judgment under Rule 37, in addition to Rule 55.

FN7. We have previously acknowledged this principle in nonprecedential decisions. *See, e.g., Robertson v. Dowbenko,* 443 F. App'x 659, 660–61 (2d Cir.2011) (summary order); *SEC v. Setteducate,* 419 F. App'x 23, 24–25 (2d Cir.2011) (summary order).

FN8. Moreover, we note that in non-discovery contexts, the district court (1) warned Birnbaum that if he continued to use the "Guggenheim" name, "the consequences [were] going to be very very severe," Hr'g Tr. 3:19, ECF No. 99–4, and, (2) by a March 7, 2011 order to show cause, directed him to respond as to "why contempt sanctions should not be imposed for his alleged failure to comply with this Court's preliminary injunction order," Order to Show Cause, ECF No. 85.

FN9. The criminal complaint against Birnbaum for wire fraud was filed on January 26, 2011; it was dismissed on September 9, 2011.

C.A.2 (N.Y.),2013.

Guggenheim Capital, LLC v. Birnbaum
--- F.3d ----, 2013 WL 3491280 (C.A.2 (N.Y.))
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.